UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN DWAYNE THERIOT #423068,

          Plaintiff,

    v.

UNKNOWN LEE, et al.,

          Defendants.

_____/

Case No. 2:18-cv-00070

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Kevin Dwayne Theriot pursuant to 42 U.S.C. § 1983. Theriot alleges that Defendants are Corrections Officers employed at the Baraga Correctional Facility. Theriot says that Defendants Lee, Capello, Larson, Carroll, White, Morgan, DeForge, and Cinio told him that either he needed to give them oral sex or they would all taser him at the same time. (ECF No. 1, PageID.4.) When Theriot responded he would not do that and would rather die, he says that Officer Lee suggested that Theriot just use his hand. (*Id.*) Theriot stated that he would not perform a gay act. Then Officer Larson tackled him from behind causing Theriot to fall forward and the officers began kicking him. (*Id.*) Theriot then stated "okay" and says that he used his hand until each officer ejaculated. (*Id.*) Theriot was placed back into his cell. (*Id.*) Theriot alleges that he was in imminent danger of physical injury due to constant threats of harm. (*Id.* at

PageID.5) After Theriot filed this complaint, the court granted Plaintiff leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a).  (ECF No. 7.)

Defendants move for an order to revoke Plaintiff's *in forma pauperis* status. (ECF No. 42).  Theriot did not respond.  After review of the pleadings, Defendants' motion, and Theriot's litigation history, I respectfully recommend that the Court revoke Theriot's *in forma pauperis* status and require Theriot to pay the $400.00 filing fee within 28 days to prevent dismissal of the case with prejudice.

## II.  Three Strikes

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*.  As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners – many of which are meritless – and the corresponding burden those filings have placed on the federal courts."  *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  For that reason, Congress put into place economic incentives to prompt a prisoner to "stop and think" before filing a complaint.  *Id.*  For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b).  The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit.  *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner

2

repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998); *accord Pointer v. Wilkinson*, 502 F.3d 369, 377 (6th Cir. 2007) (citing *Wilson*, 148 F.3d at 604-06); *Rodriguez v. Cook*, 169 F.3d 1176, 1178-82 (9th Cir. 1999); *Rivera v. Allin*, 144 F.3d 719, 723-26 (11th Cir. 1998); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997).

In *Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580 (6th Cir. 2013), the Sixth Circuit set forth the following general requirements for a claim of imminent danger: In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical

injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted).   "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id.* at 797–98; *see also Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012) ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf. Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007) (implying that past danger is insufficient for the imminent-danger exception).

> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists.  To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)."  *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Id.* at 585.  A prisoner's claim of imminent danger is subject to the same notice pleading requirement that applies to prisoner complaints.  *Id.*  Consequently, a prisoner must allege facts in the complaint from which the court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations.  *Id.*

In his one-paragraph complaint in this case, Theriot makes a conclusory allegation that he is in imminent danger of physical harm.  "A physical injury is

'serious' for purposes of § 1915(g) if it has potentially dangerous consequences such as death or severe bodily harm. Minor harms or fleeting discomfort don't count." *Gresham v. Meden*, No. 18-1911, 2019 WL 4458807 *4 (6th Cir., Sept. 18, 2019).

### III. Theriot's Litigation History

Theriot has been an extremely active litigant in the federal courts in Michigan. In more than three of Theriot's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Theriot v. Woods et al.*, No. 2:18-cv-193 (W.D. Mich. Nov. 30, 2018); *Theriot v. Hill et al.*, No. 2:18-cv-131 (W.D. Mich. Nov. 7, 2018); *Theriot v. Bates, et al.*, No. 2:12-cv-200 (W.D. Mich. June 29, 2012); *Theriot v. Malhowski, et al.*, No. 2:09-cv-154 (W.D. Mich. Aug. 7, 2009); *Theriot v. Woods, et al.*, No. 2:08-cv-300 (W.D. Mich. Feb. 26, 2009). In addition, Theriot was denied leave to proceed *in forma pauperis* pursuant to § 1915(g) in dozens of cases. *Theriot v. Neff et al.*, No. 2:19-cv-73 (W.D. Mich. May 2, 2019); *Theriot v. Mayo et al.*, No. 2:19-cv-59 (W.D. Mich. Mar. 13, 2019); *Theriot v. Hoffman et al.*, No. 2:19-cv-58 (W.D. Mich. Mar. 13, 2019); *Theriot v. Lesatz et al.*, No. 2:19-cv-57 (W.D. Mich. Mar. 13, 2019); *Theriot v. Kirchoffer et al.*, No. 1:19-cv-56 (W.D. Mich. Mar. 13, 2019); *Theriot v. Lesatz et al.*, No. 2:19-cv-55 (W.D. Mich. Mar. 13, 2019); *Theriot v. Lesatz et al.*, No. 2:19-cv-54 (W.D. Mich. Mar. 13, 2019); *Theriot v. Marshall et al.*, No. 2:19-cv-53 (W.D. Mich. Mar. 13, 2019); *Theriot v. Beauchamp et al.*, No. 2:19-cv-28 (W.D. Mich. Mar. 13, 2019); *Theriot v. Huhta et al.*, No. 2:19-cv-27 (W.D. Mich. Mar. 13, 2019); *Theriot v. Pertu et al.*, No. 2:19-cv-26 (W.D. Mich. Mar. 13,

2019); *Theriot v. Niemi et al.*, No. 2:19-cv-25 (W.D. Mich. Mar. 13, 2019); *Theriot v. Lesatz et al.*, No. 2:19-cv-24 (W.D. Mich. Mar. 13, 2019); *Theriot v. Lesatz et al.*, No. 2:19-cv-21 (W.D. Mich. Mar. 13, 2019); *Theriot v. Marshall et al.*, No. 2:19-cv-20 (W.D. Mich. Mar. 13, 2019); *Theriot v. Lesatz*, No. 2:19-cv-19 (W.D. Mich. Mar. 7, 2019); *Theriot v. Huhta*, No. 2:19-cv-18 (W.D. Mich. Mar. 13, 2019); *Theriot v. Huhta et al.*, No. 2:19-cv-17 (W.D. Mich. Mar. 13, 2019); *Theriot v. Hill et al.*, No. 2:19-cv-16 (W.D. Mich. Mar. 13, 2019); *Theriot v. Lesatz et al.*, No. 2:19-cv-15 (W.D. Mich. Mar. 13, 2019); *Theriot v. Lesatz et al.*, No. 2:19-cv-14 (W.D. Mich. Mar. 13, 2019); *Theriot v. Cummings et al.*, No. 2:18-cv-192 (W.D. Mich. Dec. 12, 2018); *Theriot v. Lesatz et al.*, No. 2:18-cv-191 (W.D. Mich. Dec. 12, 2018); *Theriot v. Antilla et al.*, No. 2:18-cv-190 (W.D. Mich. Nov. 7, 2018); *Theriot v. Lesatz et al.*, No. 2:18-cv-189 (W.D. Mich. Nov. 16, 2018); *Theriot v. Parrish et al.*, No. 2:18-cv-188 (W.D. Mich. Nov. 15, 2018); *Theriot v. Mukka et al.*, No. 2:18-cv-187 (W.D. Mich. Nov. 29, 2018); *Theriot v. Lancott et al.*, No. 2:18-cv-165 (W.D. Mich. Nov. 2, 2018); *Theriot v. Taho et al.*, No. 2:18-cv-164 (W.D. Mich. Nov. 1, 2018); *Theriot v. Waltenen et al.*, No. 2:18-cv-163 (W.D. Mich. Oct. 17, 2018); *Theriot v. Van Acker et al.*, No. 2:18-cv-162 (W.D. Mich. Nov. 2, 2018); *Theriot v. Mahi et al.*, No. 2:18-cv-161 (W.D. Mich. Nov. 2, 2018); *Theriot v. Larson et al.*, No. 2:18-cv-160 (W.D. Mich. Oct. 18, 2018); *Theriot v. Tervo et al.*, No. 2:18-cv-130 (W.D. Mich. Oct. 16, 2018); *Theriot v. Hill et al.*, No. 2:18-cv-129 (W.D. Mich. Oct. 17, 2018); *Theriot v. Waltenen et al.*, No. 2:18-cv-95 (W.D. Mich. Oct. 17, 2018); *Theriot v. Heinonen et al.*, No. 2:18-cv-94 (W.D. Mich. Oct. 17, 2018); *Theriot v. Jovial et al.*, No.

6

2:18-cv-93 (W.D. Mich. July 5, 2018); *Theriot v. Tongreva et al.*, No. 2:18-cv-72 (W.D. Mich. July 12, 2018); *Theriot v. Cordonado et al.*, No. 2:18-cv-71 (W.D. Mich. July 5, 2018); *Theriot v. Woods et al.*, No. 2:16-cv-234 (W.D. Mich. Jan. 25, 2017); *Theriot v. Massgolia et al.*, No. 2:14-cv-203 (W.D. Mich. Jan. 27, 2015).

Prior to May 2018, Theriot filed only eight lawsuits over a period of ten years. Since May 2018, however, he has filed over 50 additional actions in this district. He filed three cases on May 22, 2018, including this case. *See Theriot v. Tonequa et al.*, No. 2:18-cv-72; *Theriot v. Cordonado et al.*, 2:18-cv-71; *Theriot v. Lee et al.*, No. 2:18-cv-70. He filed four more actions on June 25-26, 2018. *See Theriot v. Waltenen et al.*, No. 2:18-cv-95; *Theriot v. Heinonen et al.*, No. 2:18-cv-94; *Theriot v. Jovial et al.*, No. 2:18-cv-93; *Theriot v. Woods et al.*, No. 2:18-cv-92. On August 3, 2018, Theroit filed three more cases. *See Theriot v. Hill et al.*, No. 2:18-cv-131; *Theriot v. Tervo et al.*, No. 2:18-cv-130; *Theriot v. Hill et al.*, No. 2:18-cv-129. Theriot filed another eight cases on September 25, 2018. *See Theriot v. Pollard et al.*, No. 2:18-cv-167; *Theriot v. Lautentres et al.*, No. 2:18-cv-166; *Theriot v. Lancott et al.*, No. 2:18-cv-165; *Theriot v. Taho et al.*, No. 2:18-cv-164; *Theriot v. Waltenen et al.*, No. 2:18-cv-163; *Theriot v. Van Acker et al.*, No. 2:18-cv-162; *Theriot v. Maki et al.*, No. 2:18-cv-161; *Theriot v. Larson et al.*, No. 2:18-cv-160. Only a month later, on October 29, 2018, Theroit filed seven additional lawsuits. *See Theriot v. Woods et al.*, No. 2:18-cv-193; *Theriot v. Cummings et al.*, No. 2:18-cv-192; *Theriot v. Lesatz et al.*, No. 2:18-cv-191; *Theriot v. Antilla et al.*, No. 2:18-cv-190; *Theriot v. Lesatz et al.*, No. 2:18-cv-189; *Theriot v. Parrish et al.*,

7

No. 2:18-cv-188; *Theriot v. Mukka et al.*, No. 2:18-cv-187.   On January 25, 2019, Theriot filed 13 more actions.  *See Theriot v. Beauchamp et al.*, No. 2:19-cv-28; *Theriot v. Huhta et al.*, No. 2:19-cv-27; *Theriot v. Pertu et al.*, No. 2:19-cv-26; *Theriot v. Niemi et al.*, No. 2:19-cv-25; *Theriot v. Lesatz et al.*, No. 2:19-cv-24; *Theriot v. Huhta et al.*, No. 2:19-cv-21; *Theriot v. Marshall et al.*, No. 2:19-cv-20; *Theriot v. Lesatz*, No. 2:19-cv-19; *Theriot v. Huhta et al.*, No. 2:19-cv-18; *Theriot v. Huhta et al.*, No. 2:19-cv-17; *Theriot v. Hill et al.*, No. 2:19-cv-16; *Theriot v. Lesatz et al.*, No. 2:19-cv-15; *Theriot v. Lesatz et al.*, No. 2:19-cv-14.  On February 27, 2019, Theriot file seven more actions. *Theriot v. Mayo et al.*, No. 2:19-cv-59; *Theriot v. Hoffman et al.*, No. 2:19-cv-58; *Theriot v. Lesatz et al.*, No. 2:19-cv-57; *Theriot v. Kirchoffer et al.*, No. 2:19-cv-56; *Theriot v. Lesatz et al.*, No. 2:19-cv-55; *Theriot v. Lesatz et al.*, No. 2:19-cv-54; *Theriot v. Marshall et al.*, No. 2:19-cv-53.  Most recently, on June 25, 2019, Theriot filed five more lawsuits in this Court.  *Theriot v. Waltenen et al.*, No. 2:19-cv-127; *Theriot v. Homan et al.*, No. 2:19-cv-126; *Theriot v. Parrish et al.*, No. 2:19-cv-125; *Theriot v. Lesatz et al.*, No. 2:19-cv-124; *Theriot v. Pertu et al.*, No. 2:19-cv-123.

Over the course of these recent § 1983 complaints, Theriot's allegations have evolved in an attempt to push the claims forward by incorporating the lessons Theriot has learned about obtaining pauper status under the imminent-danger exception to the three-strikes rule of 28 U.S.C. § 1915(g).  Prior to his most recent flurries of complaints, Theriot was denied leave to proceed *in forma pauperis* in all but this case and the following four cases:  *Theriot v. Woods et al.*, No. 2:18-cv-193 (pauper status

granted, but case dismissed as frivolous and duplicative); *Theriot v. Hill et al.*, No. 2:18-cv-131 (granted pauper status, but dismissed for failure to state a claim); *Theriot v. Lesatz et al.*, No. 2:18-cv-101 (pauper status granted; all defendants but one dismissed on grounds of immunity and failure to state a claim); *Theriot v. Woods et al.*, No. 2:18-cv-92 (pauper status initially denied but granted on reconsideration; most defendants and claims dismissed for failure to state a claim; remainder still pending). The Court regularly concluded that Theriot had failed to allege facts showing that he was in imminent danger of serious physical injury.

Following the denials of pauper status in the May through October cases, Theriot initiated new strategies. In this case for example, Theriot filed a motion to consolidate 23 of his dismissed lawsuits and 13 new lawsuits that he intended to file. (ECF No. 13.) The Court denied his motion on February 13, 2019. (ECF No. 19.) Similarly, in *Theriot v. Woods et al.*, No. 2:18-cv-92, another case in which he was permitted to proceed *in forma pauperis*, Theriot filed a motion to supplement, in which he again attempted to consolidate 22 previously dismissed cases into his surviving action.

In addition, Theriot has attempted to resurrect his many dismissed claims by filing omnibus complaints, in which he reasserts allegations from numerous prior dismissed complaints, coupled with a set of new allegations. *See Theriot v. Woods et al.*, No. 2:18-cv-193 (raising claims from January 2013 to July 2018, many of which had previously been decided against him); *Theriot v. Woods et al.*, No. 2:18-cv-92

(collecting claims between January 2013 and June 2018, most of which were previously dismissed).

As a third strategy, Theriot filed motions for relief from judgment in 17 cases that were dismissed after he was denied pauper status for failure to pay the full filing fee. *Theriot v. Cummings et al.*, No. 2:18-cv-192; *Theriot v. Parrish et al.*, No. 2:18-cv-188; *Theriot v. Mukka et al.*, No. 2:18-cv-187; *Theriot v. Lautentres et al.*, No. 2:18-cv-166; *Theriot v. Lancott et al.*, No. 2:18-cv-165; *Theriot v. Taho et al.*, No. 2:18-cv-164; *Theriot v. Waltenen et al.*, No. 2:18-cv-163; *Theriot v. Van Acker et al.*, No. 2:18-cv-162; *Theriot v. Maki et al.*, No. 2:18-cv-161; *Theriot v. Larson et al.*, No. 2:18-cv-160; *Theriot v. Tervo et al.*, 2:18-cv-130; *Theriot v. Hill et al.*, No. 2:18-cv-129; *Theriot v. Waltenen et al.*, No. 2:18-cv-95; *Theriot v Heinonen et al.*, No. 2:18-cv-94; *Theriot v. Jovial et al.*, No. 2:18-cv-93; *Theriot v. Tonequa et al.*, No. 2:18-cv-72; *Theriot v. Cordonado et al.*, No. 2:18-cv-71. In each of those 17 motions, Theriot attempted to convert his previously dismissed complaints about past incidents into claims of ongoing and immediate danger that would surmount the three-strikes hurdle of § 1915(g). The motions, however, consisted of the same single-paragraph, conclusory statement that he was in imminent danger.

Following the denial of pauper status in the 21 cases filed in January and February 2019, Theriot filed a motion for reconsideration in only one case *Theriot v. Lesatz*, No. 2:19-cv-19 (ECF No. 6). The Court denied the motion on April 12, 2019 (ECF No. 8).

In Theriot's 18 actions filed between May 22, 2018, and August 3, 2018, he complained in three cases, including this case, that, on a given day, a group of officers lured him out of his cell and either beat him, raped him (with or without an instrument), or threatened him. Such incidents purportedly occurred in the hallway, the prisoner counselor's office, or the healthcare room, after which the perpetrators would return Theriot to his cell. *See, e.g., Theriot v. Cordonado*, No. 2:18-cv-71 (six officers escorted Plaintiff to the healthcare room, where they jumped on him until he lost consciousness); *Theriot v. Waltenen et al.*, No. 2:18-cv-95 (alleging that five officers tricked him into leaving his cell, stopped him in the hall, and then took turns hitting him). Although such allegations were concerning, each complaint alleged only a discrete incident of past harm that did not suffice to establish an imminent danger.

Beginning with his September 25, 2018, lawsuits and through his October 29, 2018, lawsuits, Theriot alleged that the beatings and sodomy by large groups of officers became more frequent. In addition, his allegations became increasingly unbelievable, including allegations that the wardens and deputy wardens regularly participated and organized groups from other prisons to come to the Baraga Correctional Facility (AMF) for the purpose of assaulting and raping Plaintiff. *See Theriot v. Cummings et al.*, No. 2:18-cv-192 (alleging that Defendant Cummings organized a tour of a large number of former AMF officers, who took Theriot to healthcare and took turns raping him); *Theriot v. Lesatz et al.*, No. 2:18-cv-191 (alleging that Warden Lesatz put together a group of 16 of Theriot's enemies from the Saginaw County Correctional Facility, who, after removing Theriot from his cell, took

turns punching him in the face); *Theriot v. Lesatz*, No. 2:18-cv-189 (alleging that Warden Lesatz invited a tour of 11 staff members from the Chippewa Correctional Facility (including the Chippewa warden) to take turns pounding Theriot in the face); *Theriot v. Parrish et al.*, No. 2:18-cv-188 (alleging that four officers went to Plaintiff's cell and beat him); *Theriot v. Mukka et al.*, No. 2:18-cv-187 (alleging that five officers took him to health care and serially raped him); *Theriot v. Pollard et al.*, No. 2:18-cv-167 (alleging that six officers came to his cell while he was sleeping and beat and stomped him); *Theriot v. Lautentres et al.*, No. 2:18-cv-166 (alleging that three officers came to his cell while he was sleeping, pulled his pants down, and stuck the handle of a plunger up his anus); *Theriot v. Lancott et al.*, No. 2:18-cv-165 (alleging that ten officers coerced him to leave his cell and then serially sodomized him with a broomstick); *Theriot v. Maki et al.*, No. 2:18-cv-161 (alleging that two officers tricked him into going to healthcare, where three additional officers waited, shot him with a rubber-ball gun, pepper-sprayed him, stripped him naked, and then masturbated over him and threatened him for five hours). In all, in 9 of the 15 cases Theriot filed in September and October 2018, Theriot alleged that varying groups among 45 named and 25 unidentified officers participated in his rape and torture.

In his January 2019 filing of 13 cases, Theriot alleges that instances of assault or sodomy by multiple officials have become more frequent, alleging such claims in 12 of the 13 cases. In the thirteenth case Theriot alleges that Warden Lesatz incited a group of prisoners to attack him.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-14, Theriot claims that, on December 4, 2018, Defendant Warden Lesatz came to his cell, threatened to take action unless Theriot stopped his lawsuits, called in Officers Beauchamp, Pesola, Holma, and Cayo, and forced him to the showers.  They then took razors that had been used by other prisoners to shave him.  When he objected, they beat him, and Defendant Pesola pushed a razor up Theriot's anus.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-15, Theriot alleges that, on December 5, 2018, Warden Lesatz brought Officers Jurum, Gagnon, Reddinger, and Giles to the unit.  When he refused to drop all of his lawsuits, Lesatz allegedly ordered the team into Theriot's cell.  Jurum took out a plastic bag containing a bloody syringe.  After sticking Theriot in the hand with the needle, Jurum allegedly pulled Theriot's pants down and pushed the syringe handle up Plaintiff's anus.

In *Theriot v. Hill et al.*, No. 2:19-cv-16, Theriot alleges that, on December 6, 2018, he had a seizure and Officer Pollard called healthcare.  Healthcare providers Hill and Jeffries responded and directed Pollard and Antilla to take him to healthcare.  Theriot was taken on a gurney to healthcare.  Theriot alleges, however, that, once he arrived in healthcare, Hill told him that she was not going to help him and that the transport had been done for the cameras.  Theriot claims that Hill and Jeffries left laughing and that Antilla, Pollard, and Hemmila subsequently took turns raping him.

In *Theriot v. Huhta et al.*, No. 2:19-cv-17, Theriot alleges that, on December 8, 2018, he passed out.  He awoke to find that Officers Hemmila, Huhta, Pesola, Holma, and Antilla were taking turns raping him.

In *Theriot v. Huhta et al.*, No. 2:19-cv-18, Theriot alleges that, on December 9, 2018, the same five officials threatened to rape him again, if not that day, then the next.  When Theriot saw the group on the unit the following day, he purportedly had a panic attack, during which all five officers allegedly raped him again.

In *Theriot v. Lesatz*, No. 2:19-cv-19, Theriot alleges that, on December 12, 2018, Defendant Lesatz visited him, telling him that they were going to find a way to stop him from filing lawsuits and grievances.  When prisoners began to call out, telling Lesatz to leave Theriot alone, Lesatz allegedly called out that Theriot was not only a snitch, but also a child molester.  That night, five prisoners jumped Theriot, punching and kicking him and calling him a rat.

In *Theriot v. Marshall et al.*, No. 2:19-cv-20, Theriot alleges that, on December 13, 2018, Deputy Warden Marshall, Assistant Deputy Warden Peterson, and Officers Cayo, Moss, and Ross opened his cell door and stuck a plunger handle up his anus.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-24, Theriot alleges that, on December 17, 2018, Warden Lesatz and Deputy Warden Peterson brought officers Ross, Cayo, and Deforge to his cell.  Officers Cayo and Ross held his feet while Deforge placed a pillow over Theriot's face and tried to smother him.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-21, Theriot alleges that, on December 18, 2018, Warden Lesatz and Officers Huhta and Hemmila came to his cell, restrained

14

him, and took him to a filthy cell.  There, Huhta told Theriot to strip for a search.
While Theriot was bent over, Huhta stuck his index finger in Theriot's anus, causing
all three officers to laugh.

In *Theriot v. Niemi et al.*, No. 2:19-cv-25, Theriot alleges that, on December 30,
2018, Officers Hemmila, Huhta, Pesola, and Kirchoffer entered his cell, held him
down, and stripped him.  Defendant Niemi then entered his cell and stuck a plunger
handle up Theriot's anus.  The other officers laughed.

In *Theriot v. Pertu et al.*, No. 2:19-cv-26, Theriot alleges that, on January 1,
2019, Officers Heinenen, Pesola, and Wickstrom, together with Lieutenant
Wickstrom and Resident Unit Manager (RUM) Pertu, came to his cell in full riot gear.
The officials, after describing their retaliatory motive, took Theriot to healthcare,
where Lieutenant Wickstrom directed the others to repeatedly dunked his head into
a bucket of water until Theriot agreed to stop writing lawsuits.

In *Theriot v. Huhta et al.*, No. 2:19-cv-27, Theriot alleges that, on January 7,
2019, officers Huhta, Baril, Mayo, Cordonado, and Menard came to his cell and coaxed
him out.   They restrained him and brought him to healthcare, where they
waterboarded him for half an hour.  They told him that Lesatz had ordered them to
continue such actions for as long as he is at AMF.

In *Theriot v. Beauchamp et al.*, No. 2:19-cv-28, Theriot alleges that, on January
14, 2019, Officers Hemmila and Parish came to his cell and told him he had a visitor.
Theriot refused to leave his cell.   The officers left and returned with Officers
Kirchoffer and Beauchamp, dressed in riot gear.  They threatened Theriot if he did

15

not come out.  They then took him to healthcare, where RUM Tonequa was waiting.

Tonequa described his intent to retaliate and then turned Theriot over to the other

officers, who took turns anally raping him before they stuck a broomstick up his anus.

In Plaintiff's February 2019 batch of seven cases, he claimed that the assaults

and sodomy continued.

In *Theriot v. Kirchoffer et al.*, 2:19-cv-56, Theriot alleged that, on January 15,

2019, corrections officers Kirchoffer, Wickstrom, Larson, Deforge, and Huhta brought

him to the roof where they beat him and then dangled him by his ankles over the

edge of the building.  They continued to hold Theriot over the edge until he agreed to

stop filing lawsuits.  He agreed; they pulled him back to the roof.  As the officers

walked Theriot back to his cell, they stopped and took turns sticking a pencil in his

anus.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-55, Theriot alleged that, on January 16,

2019, Warden Lesatz, Deputy Warden Marshall, and three officers, Stein, Basil, and

Puri, took him to the warden's office where the warden loaded one bullet into a

revolver, spun the cylinder, put the barrel to Theriot's head, and pulled the trigger.

Lesatz continued that practice as he threatened Theriot regarding lawsuits.  Theriot

agreed to stop "as the tears began to fall."  (*Theriot v. Lesatz et al.*, No. 2:19-cv-55,

Compl., ECF No. 1, PageID.3.)  The Defendants took turns hitting Theriot in the face

saying "No more lawsuits."  (*Id.*)  And then Defendant Marshall stuck the gun barrel

into Theriot's anus.

16

In *Theriot v. Hoffman et al.*, No. 2:19-cv-58, Theriot alleged that on February 5, 2019, Administrative Assistant Hoffman and Officers Goodreva and Holma approached his cell to convey messages from Defendants Legislative Corrections Ombudsmen Olivia Ghislan and Keith Barber. They told Theriot that all of his lawsuits were a P.R. nightmare. They beat Theriot and stripped him and then shaved his legs, back, and buttocks with used razors that could transfer H.I.V. or any other disease.

In *Theriot v. Lesatz et al.*, 2:19-cv-57, Theriot alleged that on February 6, 2019, Warden Lesatz, Deputy Warden Marshall, and Residential Unit Manager Niemi came to Theriot's cell with a fourth man: former Michigan governor Rick Snyder. Governor Snyder allegedly told Theriot he was there on behalf of prosecuting attorney Joseph O'Leary. The warden had three cans of gas and sprayed all three cans into Theriot's cell. Theriot passed out. On February 17, 2019, five prisoners entered Theriot's cell and put a plastic bag on his head until he passed out. When Theriot woke up, there was a plunger handle in his anus. Later that day, Lesatz, Marshall, Niemi, and Snyder returned to convey that O'Leary wanted Theriot to stop filing lawsuits.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-54, Theriot alleged that, on February 15, 2019, Judge Janet T. Neff directed Warden Lesatz and officers Hemmila, Kutchie, and Bastian to drag Theriot into the shower, hang him with a noose, and stick their fingers in his anus in an effort to get him to yield five complaints he was carrying. Theriot handed over the complaints.

In *Theriot v. Maloney et al.*, No. 2:19-cv-53, Theriot alleged that, on February 16, 2019, Judge Paul L. Maloney directed defendant corrections officers Marshall, Holma, Hemmila, and Cordonado to take action against Theriot. The officers chained Theriot to a gun tower and ran a truck at him at high speed. He was offered the choice of discontinuing his litigious ways or being rammed by the truck. He agreed to quit and the truck was able to stop, but only a couple of feet away from Theriot. After the officers returned Theriot to his cell, Officer Hemmila stuck his finger in Theriot's anus.

In reviewing the January and February cases, the Court found Theriot's allegations and requests to proceed *in forma pauperis*, viewed collectively, to be incredible. The Court also found that Theriot further strained credulity by his new strategy of alleging a statement of retaliatory intent at the end of his complaints. In seven of the nine cases filed in January 2019, Theriot attributed an unlikely and specific statement to one officer, always a different one, declaring a retaliatory motive or threatening continued assaults unless Theriot stops bringing lawsuits. In the other two cases, Theriot included a declaration by one of the officials to the effect that officers either enjoyed hurting him or that he could die for all they cared. Similarly, in all seven of the cases filed in February 2019, Theriot alleges that officers made statements to the same effect.

To add further to the appearance of fabrication, Theriot made allegations about his medical symptoms in two cases that appeared to have been copied directly from court opinions, to which Theriot directed the Court's attention. *See Theriot v. Lesatz*

18

*et al.*, No. 2:19-cv-21 (describing the respiratory symptoms he experienced from a dirty and unventilated cell in nearly identical terms with *Gibbs v. Cross*, 160 F.3d 962, 964 (3d Cir. 1998)); *Theriot v. Huhta et al.*, No. 2:19-cv-18 (directly quoting *Caipaglini v. Saini*, 342 F.3d 328, 330 (7th Cir. 2003)), for symptoms of a panic attack).   In this way, Theriot appeared to have manufactured his allegations to correspond with cases he has found.

The Court found that Theriot had repeatedly adapted the form of his complaints to avoid the three-strikes rule by routinely offering reasons why each scenario presents an imminent danger of serious physical harm.   First, by constant repetition, he suggested that the alleged actions of the many officers form a pattern that would continue.   Second, he often broadly claimed that Defendants denied him healthcare services after most of the alleged assaults.   Finally, he alleged that, at the end of most of the incidents, one of the perpetrators made an explicit threat that the incidents would continue as long as Theriot continued his grievances and lawsuits or as long as he is housed at AMF.

In his five new cases filed in June 2019, Theriot's allegations again reflect his preoccupation with the idea of anal penetration.   Theriot's complaints still consist of a single paragraph, in which he claims that various groups of officers harassed him and physically assaulted him and that one or more defendants placed something (a body part or object) in his rectum.   Theriot also makes conclusory allegations that the actions were in retaliation for his filing of grievances and lawsuits, that he has been and will be denied medical care, and that he is in imminent danger of serious physical

injury.  In addition, Theriot alleges that all five of the lawsuits were the result of Judge Paul Maloney's decision denying Theriot's motion for preliminary injunctive relief in *Theriot v. Woods et al.*, Case No. 2:18-cv-92.

In *Theriot v. Holman et al.*, No. 2:19-cv-126, Theriot alleges that, on May 28, 2019, he was awakened when Defendant Correctional Officers Holma, Huhta, Pesola, Larson, and Henonen entered his cell, dragged him from bed, and began striking him. Then, Theriot alleges, the Defendants pulled his pants down and Defendant Huhta allegedly stuck his "round beeper" up Theriot's anus, saying, "[Y]ou better stop with this lawsuit stuff or more will come." (No. 2:19-cv-126, PageID.3.)

In *Theriot v. Parrish et al.*, No. 2:19-cv-125, Theriot complains that on June 4, 2019, Defendant Correctional Officers Krichoffer, Parrish, Knutellia, Hemmila, and Bessely pulled Theriot out of his cell.  The officers told Theriot that the nurse practitioner wanted to see him about his complaint of having blood in his feces. Theriot was escorted to the health care room, but no one was there.  Theriot asked where the nurse practitioner was, and Defendant Knutellia responded, "Right here." Defendants repeatedly struck Theriot in the face with their fists until he lost consciousness. When he woke up ten minutes later, Defendants were standing over him.  Defendant Parrish said, "[W]e wanted you awake for this."  (No. 2:19-cv-125, PageID.3.)  The officers then allegedly removed Theriot's pants and took turns raping him.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-124, Theriot alleges that Defendant Warden Lesatz conducted a round on June 11, 2019.  Lesatz asked Theriot why he

had not appeared at his Security Classification Committee (SCC) hearing.  Theriot responded that he had not been allowed to go, because Lieutenant Wickstrom had placed him on "no out of cell movements" for having rejected Wickstrom's sexual advances.  (No. 2:19-cv-124, PageID.3.)  Warden Lesatz allegedly smirked.  Ten minutes later, Lesatz returned with Lieutenant Wickstrom, Captains Delene and Beauchamp, and RUM Niemi.  Lesatz told Theriot to repeat what he had told Lesatz to the other officers.  When Theriot did so, Wickstrom produced a can of spray and began to shake it.  Niemi then opened the food slot, and Wickstrom sprayed Theriot with pepper spray.  Theriot alleges that Warden Lesatz ordered the others to hold Theriot down.  While Theriot was held down, his pants were pulled down.  Wickstrom whispered in his ear, "You can never reject my sexual advances!"  (*Id*.)  Wickstrom then allegedly raped Theriot.

In *Theriot v. Pertu et al.*, No. 2:19-cv-123, Theriot alleges that, on May 1, 2019, Defendant RUM Pertu approached his cell, stating, "Did you think our little conflict was over?  I was just waiting for the time so I can get you back.  Now I brought a few friends!"  (No. 2:19-cv-123, PageID.3.)  RUM Sacked and Correctional Officers Decelliar, Cordonado, and Mayo came to the cell in riot gear.  Sacked stated, "I[']ve bee[n] waiting to see you naked again for some time, Theriot[!]"  (*Id*.)  Sacked opened the food slot and pointed his taser at Theriot.  Theriot begged Sacked not to taser him and promised to comply with orders.  Pertu told Theriot to lie on the floor, face down.  Theriot did so.  Pertu performed a body search and then stuck his finger up Theriot's rectum.  The other Defendants laughed at Theriot.  Mayo asked, "Hey, Theriot, does

21

this remind you of the 3rd of May?" (*Id.*)  Theriot claims that May 3, 2018, was the date he allegedly was sodomized, as described in Case No. 2:18-cv-92.  After Pertu finished, Sacked, Decelliar, and the others took turns putting their fingers in Theriot's rectum.  Theriot alleges that the assault lasted 15 minutes.

In *Theriot v. Waltenen et al.*, 2:19-cv-127, Plaintiff alleges that, on May 22, 2019, Defendant Correctional Officers Waltenen, Reddington, Lautortres, and Snow verbally mocked and taunted him and loudly repeated a number of Theriot's prior allegations about being sodomized and threatened.  He contends that, out of embarrassment of having other prisoners hear he was raped, he denied any rapes. Defendants allegedly became annoyed.  Lautortres said, "I'll prove you were raped you [sic] before!" (2:19-cv-127, PageID.3.)  Defendants called Sergeant Turum, who told Theriot to move to the cell door.  When Theriot refused, the five defendants allegedly began shooting Theriot with a bean-bag gun.  Theriot gave up and came to the door to be restrained.  Defendant Waltenen allegedly pulled down Theriot's pants and stuck a finger up his rectum, saying, "See!"  (*Id.*)

In this case, Theriot says that he was forced out his cell and instructed to give officers oral sex or he would be tasered.  When he refused he was assaulted until he agreed to use his hands on each officer until they ejaculated.

Theriot's allegations in this case are incredible standing on their own.  They are even less credible when taking into account the multiplicity of fantastic, yet conspicuously similar, allegations in his many other cases.  In those cases, Theriot has alleged that, every few days for many months, dozen of AMF officials (and

invitees from other prisons) have taken turns physically assaulting him, usually followed by acts of sodomy. These officials have included a former governor, former state representative, Warden Lesatz, deputy wardens, and visitors from other facilities. At the end of each such event, a perpetrator issues an improbably-worded statement of his intent to retaliate and commit future assaults. Such a pattern, formed by fantastic claims, will not suffice to establish imminent danger.

### IV. Recommendation

For similar reasons, Theriot's allegations regarding Defendants' implied threat of future harm are also fantastic. Such allegations will not suffice to transform Theriot's story into an imminent danger. Conclusory allegations will not suffice to establish imminent danger. In the opinion of the undersigned, Theriot has failed to plausibly allege an imminent danger of serious physical injury. Therefore, § 1915(g) prohibits Theriot from proceeding *in forma pauperis* in this action.

For these reasons, I respectfully recommend that the Court grant Defendants' motion to revoke his *in forma pauperis* status (ECF No. 42.)

It is further recommended that the Court order that Theriot has twenty-eight (28) days to pay the entire civil action filing fee, which is $400.00. If Theriot fails to pay the filing fee within the 28-day period, his case will be dismissed without prejudice, but he will continue to be responsible for payment of the $400.00 filing fee.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C);

Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   October 10, 2019                              /s/ *Maarten Vermaat*
                                                       MAARTEN VERMAAT
                                                       U.S. MAGISTRATE JUDGE